NORMAN STEVENS, APPELLANT, v. EDWARD J. HURLEY, ET AL., RESPONDENTS.*

Kansas City Court of Appeals. February 1, 1926.

1.—Appeal and Error—Whether Agent Without Written Authority Was Acting for Principals in Making Five-Year Lease Held Mixed Question of Law and Fact. Where evidence showed agent had no written authority to make agreement for five-year lease, and lessee contended owner's acts and conduct showed estoppel by ratification, the submission to jury of question whether agent was acting on part of principals at the time was a mixed question of law and fact.

2.—Specific Performance—In Order to Obtain Specific Performance Lessee Required to Show His Possession Was Pursuant to and Referable Solely to Parol Agreement Extending Lease. Where tenant under five-year lease while in possession made parol agreement for extension, and then made certain improvements, in suit for specific performance of such parol agreement, in which defendant relied upon the Statutes of Fraud as a defense, it was necessary for plaintiff to show his possession was pursuant to and referable solely to parol agreement.

3.—Parties—In Suit for Specific Performance of Parol Agreement, Rights of Lessees Not Parties to Suit Could Not be Determined. Where tenant made oral agreement to extend lease and before termination of existing lease, premises were leased to others, in action for specific performance of parol agreement rights of such other lessees, who were not parties to suit, could not be determined.

4.—Same—Specific Performance—Where All of Lessees Claiming Interest in Lease Were Not Joined as Parties, Specific Performance of Parol Agreement to Lease Could Not be Decreed. Where parol agreement was made with tenant to extend lease, but before termination of existing lease premises were leased to others, tenant could not have specific performance of parol agreement without joining other lessees as parties to suit, because lessor could not make lease sought by plaintiff, the lease for same period having already been made to other lessees, and cancellation of second lease could not be decreed as other lessees were not parties to suit.

5.—Appeal and Error—Objection Made for First Time in Reply Brief Cannot be Considered. Where point that one of several defendants did not file answer was made for first time in reply brief, the same cannot be considered.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 689, n. 41; p. 742, n. 3; p. 775, n. 1; p. 776, n. 5; p. 1431, n. 1; 4CJ, p. 648, n. 33; p. 649, n. 36; p. 843, n. 65; Judgments, 33CJ, p. 1106, n. 58; Specific Performances, 36Cyc, p. 574, n. 6, 7; p. 575, n. 8, 9; p. 647, n. 20; p. 653, n. 53; p. 761, n. 68; p. 762. n. 69; p. 763, n. 70; p. 767, n. 99; p. 768, n. 1, 2; Trial, 38Cyc, p. 1529, n. 91.

Appeal from the Circuit Court of Pettis County.—Hon. Dimmitt Hoffman, Judge.

AFFIRMED.

*Lamm & Lamm* and *Bohling & Bohling* for appellant.

*Paul Barnett* for respondents.

BLAND, J.—This is a suit in equity wherein plaintiff seeks the specific performance on the part of defendants of a parol agreement to execute to him a lease of the lower floor of a certain building located in Sedalia, for a period of five years commencing June 1, 1924, and ending May 31, 1929, and if defendants refuse to execute such a lease that the court decree the execution of the same.

The facts show that defendants, other than Edward J. Hurley, are the owners as tenants in common of the premises in question. The building in his lifetime was owned by Edward Hurley who died a number of years ago. Edward Hurley devised the premises to the defendants, who are his widow and children. In the year 1915, the defendant, Edward J. Hurley, sold his interest in the property to his mother, the defendant, Kate H. Hurley. On May 15, 1919, defendant, Edward J. Hurley, entered into a written lease with one Mounts wherein the said Mounts was given a five-year lease ending on May 31, 1924, to the north thirty-three feet of the first floor of the building in question. This lease recites that it was between "Edward J. Hurley, Agent for the estate of Edw. Hurley, deceased" and Mounts, and was signed by "Edward J. Hurley, Agent for the estate of Edw. Hurley, deceased." On August 24, 1920, the unexpired portion of the lease having been sold by Mounts to plaintiff herein, Hurley made an endorsement upon the lease as follows: "We hereby agree to the transfer of this lease to Norman Stevens, per terms of said lease. (signed) Edward J. Hurley, Agent for the estate of Edw. Hurley, deceased."

Mounts conducted a barber shop on the premises and after the assignment of the lease to plaintiff remained in the premises as tenant of plaintiff and conducted his business therein until January 1, 1921. Plaintiff's evidence tends to show that he and his wife desired to use the building for a millinery shop after the expiration of Mounts' tenancy under plaintiff on January 1, 1921, and in October, 1920, called upon the defendant Edward J. Hurley with sketches of the improvements they desired made, with the idea of paying increased rent if said Hurley would make the improvements. Hurley refused to make the improvements and said that he "would not spend a dime on the building." Plaintiff suggested that he would do the remodeling provided that said Hurley would give an extension of the lease but that he would have to have more than three years and five months (the remainder of the Mounts lease); that he would be out $660 on account of paying Mounts for his barber shop, and to spend any more money for so short a time would make the rent prohibitive. Hurley then asked plaintiff what plaintiff thought it would cost to fix up the building and plaintiff

estimated that the expense would be $1,000 and stated that he would do the remodeling and if he did it, he desired a five-year's extension of the lease, the new lease not only to cover the north thirty-three feet of the first floor of the building but the balance of the first floor, or the twenty feet behind Mounts barber shop, occupied by the Hoffman Hardware Company.

Finally, Hurley suggested that plaintiff take the entire ground floor of the building for an additional five years, and that the rent for the five-year period would be $75 per month, which was the rental then received by the owners for the entire first flood. The Hoffman Hardware Company's lease expired concurrently with the Mounts lease, but Hurley did not want the hardware company to know that he was giving a lease upon its part of the building, and said he would not give a written lease but would give his word of honor that if plaintiff spent as much as $600 on the property in the way of permanent improvements, plaintiff could have the front thirty-three feet for the next three years and five months, the remainder of the Mounts lease (which, of course, he was already entitled to) and the entire floor, front and rear, at $75 per month for five years after the termination of the Mounts lease, that is to say, plaintiff was to have a lease for a term of five years commencing June 1, 1924.

Plaintiff agreed to Hurley's terms and relying upon the verbal agreement went ahead with the improvements. It is unnecessary to describe the nature of the improvements, plaintiff's evidence tends to show that the store room was in bad repair and required a considerable amount of work to make it an up-to-date store room, which plaintiff proceeded to do, and the remodeling was of a sufficient kind to justify one in coming to the conclusion that it could be considered a valuable permanent improvement of the building. Plaintiff testified that the total cost of the improvements, not including the furnishing and fixtures, amounted to over $1900, and that he would not have made such valuable improvements relying solely on the unexpired period of the Mounts lease.

On February 10, 1921, a day or two before the millinery shop was opened, Hurley came into the premises and approved what had been done, stating that the building was certainly a credit to Third street, etc., and that plaintiff had done a much better job than Hurley expected and that he realized that plaintiff had spent more money than he had intended to spend. Plaintiff again suggested a written lease and Hurley assured him that he had a verbal lease and that his (Hurley's) word was as good as a written one. In June, 1923, plaintiff heard that Hurley was planning on renting the store room to other parties, so he went to see Hurley, who admitted that this was what he was intending to do. Hurley did not remember about the agreement to extend plaintiff's lease. Plaintiff demanded a written lease and Hurley refused to give one.

On April 24, 1924, Hurley wrote plaintiff notifying him that the lease he held on the store room from Mounts expired on May 31, 1924, and that the building had been leased to other parties and asked him to make arrangements to vacate the building on that day. Plaintiff refused to surrender the possession of the premises but unsuccessfully tendered Hurley the sum of $40 for the June rent, having paid the rent due under the Mounts lease up to the 1st of June.

Defendant, Edward J. Hurley, denied that he ever made the promise for another lease and all the other defendants denied that they had ever heard of any agreement for an oral lease or to extend the lease at the expiration of the period covered by the Mounts lease; they all testified that Edward J. Hurley had no oral or written authority from them to execute any written lease whatsoever. The evidence is undisputed, in fact the pleadings admit, that prior to the expiration of the Mounts lease, the defendants by written lease demised the entire first floor of the building to Ormond and Klueber Optical Company for a term of five years, beginning June 1, 1924. The lessee under that lease expected to get possession on that day. Of course, it did not do so as plaintiff has refused to vacate, but under an agreement with Hurley they are collecting the rent from the hardware company, which remains in possession of the rear part of the building, and are paying over this rent to Hurley. Plaintiff testified that prior to the time the lease was given to Ormond and Klueber Optical Company, he met Dr. Geiger, one of that company's owners, on the street and that the latter told plaintiff that he intended to rent the building from Hurley and plaintiff informed Dr. Geiger of his agreement with Hurley.

The answer denied that Edward J. Hurley acting for himself or as agent for the other defendants, had agreed that plaintiff should have a lease for a period of five years beginning June 1, 1924, and denied that plaintiff made any improvements on the building on the faith of any such agreement. It alleged that the greater part of the money spent by plaintiff was upon fixtures and temporary improvements ordinarily made by tenants operating a store, and denied that Hurley had any authority from the other defendants to lease or agree to lease said premises to the plaintiff. It alleged that defendants had never ratified any action on the part of said Hurley, seeking to lease or agree to lease the premises at the termination of the Mounts lease and alleged that the agreement set out in plaintiff's petition was one that was required to be in writing and lawfully authorized in writing and that no such agreement was made, orally or in writing, by said Hurley; that Hurley was never authorized to make any such agreement, either orally or by writing;

that no possession was ever taken by plaintiff under any oral lease and that such an oral lease would not be binding either in law or equity, and defendants pleaded sections 2167 and 2169, Revised Statutes 1919 (Statutes of Fraud) in bar to the action. The answer alleged that before plaintiff's suit was brought the premises in question were leased to Ormond and Klueber Optical Company and that this company had not waived its rights under such lease but was insisting upon the same and, therefore, a performance of the alleged oral agreement set up in plaintiff's petition could not be had. This was followed by a general denial.

The reply set out acts and conduct on the part of the defendants alleged to show an apparent authority in the said Hurley as agent for the other defendants to make the oral contract and alleged that plaintiff relied upon such apparent authority and set forth acts which it was alleged show a ratification of the acts of said Hurley on the part of the other defendants. It also alleged that the Ormond and Klueber Optical Company had knowledge that plaintiff occupied the premises in question and knew of the relation then existing between plaintiff and the defendants and had knowledge of the agreement set out in the petition when its lease was made, and that plaintiff's agreement was made long prior to the time of the alleged lease between the Ormond and Klueber Optical Company and the defendants.

The court called a jury to aid him in ascertaining the facts and submitted to them certain questions. The jury returned answers to these questions, stating that they believed beyond a reasonable doubt that Edward J. Hurley made promises to the plaintiff that led him to make permanent improvements on the premises in question that he would not have made unless he was to have had a lease for a term beyond June 1, 1924; that they believed by the preponderance of the evidence that plaintiff made permanent improvements on the building to the extent of about $1500 and that he had made these on the promise of Edward J. Hurley for a five-year lease and that the "defendant Edward J. Hurley was acting on the part of the co-defendants at the time he made promise of extension of lease." The court adopted the findings of the jury but, nevertheless, rendered a verdict in favor of the defendants, and plaintiff has appealed.

There are several questions that must be resolved in favor of plaintiff before he is entitled to recover in this case. In the first place, the evidence is undisputed that Edward J. Hurley had no written authority to make the alleged agreement for a five-year lease and plaintiff relies upon the alleged acts and conduct of said Hurley's co-defendants which he claims show estoppel by ratification. The submission to the jury of the question as to whether said

Hurley was acting on the part of his co-defendants at the time he made the promise to extend the Mounts lease, was a submission of a mixed question of law and fact, and their finding upon the question is of little value. Without setting out the testimony which plaintiff contends showed ratification, we will state that it is a serious question as to whether the acts relied upon constitute ratification. We need not pass upon this question for reasons that will hereinafter appear.

Another very serious question, even adopting the findings of facts made by the jury, as was done by the trial court, is whether, in view of the fact that plaintiff was already in possession of the premises under the Mounts lease at the time he made the improvements, his possession was pursuant to and referable solely to the parol agreement. This it is necessary to be shown in order for plaintiff to recover. [See Emmel v. Hayes, 102 Mo. 186.] But a more serious question is the existence of the lease to Ormond and Klueber Optical Company. Plaintiff failed to make this company a party defendant. It has a valid lease upon the entire first floor of the building for the entire period of time that plaintiff claims he was to have had a new lease. The rights of Ormond and Klueber Optical Company cannot be determined in this suit, they not being parties thereto. [36 Cyc. 767.]

"The plaintiff cannot have a decree for specific performance of a contract to convey when defendant, at the time of the hearing, has no title or means of compelling a conveyance of the title. The court cannot compel defendant to purchase a title from a stranger. The rule applies where the vendor has a legal but no equitable title, having made a prior valid and recorded contract to sell to another. But it does not apply where the vendor is the equitable owner, as where he holds the agreement of the owner of the legal title to convey to him, and such owner is joined as a party to the suit. A contract for the purchase of standing timber cannot be specifically enforced by the purchaser, where the owner has parted with title before suit was brought." [36 Cyc. 574-575.] [Gupton v. Gupton, 47 Mo. 37; Brueggeman v. Jurgensen, 24 Mo. 87.]

"Where the vendor or lessor, after the contract, conveys the land to a purchaser who takes with notice of the contract, actual or constructive, or who does not part with a valuable consideration for his purchase, such grantee takes and holds the land as a constructive trustee for the vendee or lessee, and may be compelled at his suit to perform the original contract by conveying or leasing the land to the vendee or lessee. The same rule may apply to other contracts than those for the sale or lease of land. Of course, in order that the rule may apply, the contract must be of such a character that the court can specifically enforce it." [36 Cyc. 761-763.]

"All parties claiming an interest in the land obtained from the vendor subsequent to the contract, and with notice of the contract, have been held to be necessary defendants." [36 Cyc. 768.] [Moore and Porter v. McCullough, 5 Mo. 141; Jenkins v. Wiley, 254 S. W. 94, 96, 97.]

In all the cases that we have found in this State where specific performance has been granted in cases involving a subsequent purchaser with notice of plaintiff's right, the suit has been against the subsequent purchasers. [Waddington v. Lane, 202 Mo. 387; Randolph v. Wheeler, 182 Mo. 145; Hagman v. Shaffner, 88 Mo. 24; Thompson v. Henry, 85 Mo. 451; Fishing Club v. Cottle, 172 Mo. App. 574.] The cases of Real Estate Co. v. Spelbrink, 211 Mo. 671, 679, 680, and Scheerer v. Scheerer, 287 Mo. 92, cited by plaintiff, are not in point. In those cases the defendants had some title although not of the character that they agreed to convey, but the purchasers were willing to accept what title defendants had. The court did not unconditionally order specific performance as to title the defendants did not have. Here, as we have before stated, the defendants had made the Ormond and Klueber Optical Company a lease covering the entire term for which plaintiff is seeking to obtain a new lease. It seems apparent to us that plaintiff cannot obtain a specific performance of the oral agreement for a lease or a renewal of the Mounts lease against these defendants, for the reason that the defendants have no means of making the lease sought by plaintiff, the lease for the same period having already been made to another.

In his reply brief plaintiff states that Edward J. Hurley did not file an answer and for that reason the court erred in overruling plaintiff's motion for judgment by default against him. This point is made for the first time in the reply brief and for this reason alone we might ignore it. Aside from this, the record fails to bear out plaintiff's contention. The record filed here is very inartificially drafted but under the heading of "Answer" appears the following: "The answer of the respondents (omitting caption and signatures) is as follows." Then follows what appears to be the answer. From other parts of the abstract we learn that Edward J. Hurley is one of the respondents. The answer itself, which appears to be a joint answer of all the defendants, contains nothing to suggest that it was not being made by defendant Edward J. Hurley as well as the other defendants.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.